JUAN RODRÍGUEZ, by his guardian *ad litem* JUAN IRIZARRY RODRÍGUEZ, Plaintiff and Appellee, *v.* NATIONAL CASH REGISTER Co., Defendant and Appellant.

No. 2651.  Argued December 17, 1925.—Decided July 9, 1926.

*Manuel Cruz Horta* for the appellant.   *Mariano Acosta Velarde* and *Federico Acosta Velarde* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an appeal from a judgment against the defendant corporation and in favor of the plaintiff for the sum of $1,000 and the costs in an action for damages for personal injury to the plaintiff's right foot by the falling thereon of an apparatus called a credit-file, weighing more than 125 pounds.

The plaintiff alleged that on March 15, 1920, José Casals Valdés, an employee or representative of the defendant, asked the plaintiff, who was then under 14 years of age, to assist him in carrying an apparatus called a credit-file from a store to a hand-cart on the street, saying that he would pay him for the service; that while Casals and the plaintiff were about to put the apparatus on the hand-cart Casals negligently and carelessly let it fall from his hands onto the plaintiff's foot; that thereby his foot was crushed severely and the wound caused him great physical pain; that he had to remain in a hospital for more than six months undergoing medical treatment, and that his foot would be deformed for his whole life, thus impairing his physical development as well as his earning capacity.

The findings of the lower court in support of its judgment were as follows:

"That the plaintiff, Juan Rodríguez, was, at the time of the accident referred to in the complaint, under 14 years of age; that the defendant is a corporation organized and created under the

laws of the state of Ohio, United States of America, and properly authorized to do business in Porto Rico; that the National credit-file apparatus weighs more than 125 pounds; that José Casals Valdés was at the time the facts alleged in the complaint took place, March 15, 1920, an employee of the defendant engaged in the sale of National credit-files belonging to the defendant corporation, and that he received a commission on the sales made as compensation for his services. That on March 15, 1920, José Casals Valdés, an employee of the defendant, while engaged in that business of the defendant consisting in offering for sale a credit-file belonging to it to José Rivera Olán, a merchant of Mayagüez, engaged the plaintiff to assist him in carrying the said credit-file from the store of Rivera Olán to a hand-cart in front of the said store. That the plaintiff and the defendant's employee took up the said apparatus, one at each end, and while they were carrying it in that way José Casals Valdés, the defendant's employee, let it slip from his hands and the apparatus fell on the plaintiff's right foot; that as a consequence of this the plaintiff received a wound five inches long in his right foot which penetrated the fibular articulation; that the plaintiff was under medical treatment for more than six months in the Municipal Hospital of Mayagüez; that as a consequence the plaintiff suffered physical pain as well as mental anguish while being attended by the physician; that the fall of the credit-file on the plaintiff's foot as well as the wound received and the damages and injuries caused to the plaintiff were solely and exclusively due to the fault, carelessness and negligence of the defendant's employee; that as a consequence of the wound received and of the physical suffering and mental anguish as well as of what he has failed to earn he has suffered damages and injuries which may be estimated at the sum of $1,000.''

That the complaint did not state facts sufficient to constitute a cause of action is argued in the first assignment of error. Several reasons are set out therefor and we shall examine them separately.

██ It is contended that although this action was brought under sections 1803 and 1804 of the Civil Code, the complaint failed to allege that the employer was negligent in selecting his employee. That averment is not necessary. The liability of an employer does not end with his having exercised all of the diligence of a good father of a family in selecting his

employees. It must be further shown as an affirmative defense that he exercised the care and vigilance which ought to have been employed in order to avoid the injury. This Supreme Court had determined the scope of section 1804 when in the case of *Maldonado* v. *Porto Rico Drug Co.*, 31 P.R.R. 709, it said:

. "To ascertain the effect of this evidence it is necessary first to determine the scope of the statute cited. It is the same as the last subdivision of section 1903 of the old Civil Code. The appellee cites no applicable jurisprudence. Nor have we been able to find any in the decisions of the Supreme Court of Spain. In his commentaries Manresa merely says:

" 'We need only explain the scope or extent of the liability imposed upon persons who must answer for damages caused by others, as well as the effects of this obligation:

" '1st.—That the said liability ceases when those upon whom it is imposed by section 1903 prove that they employed all of the diligence of a good father of a family, the said section establishing a legal presumption of the culpability of the persons therein mentioned, for by reason of the relations of authority or superiority that they have over the authors of the damage the law presumes that they are liable the same as if the damage had been caused by their own fault or negligence, considering them as moral authors of the damage because of their failure to employ the necessary care or vigilance to prevent others from doing it. This is in accordance with the judgment of May 18, 1904, cited. But the presumption established by law is not absolute or *juris et de jure*, but *juris tantum*, and therefore, yields to evidence to the contrary.

* * * * * . * *

. " 'Our code has not followed the Italian school, but was rather inspired by the French doctrine, for it imposes the obligation to repair the damage by virtue of a *juris tantum* presumption of fault on the part of the person who has under his authority or dependency the author of the damage, arising from failure to employ the proper care or vigilance over the acts of their subordinates in order to prevent the said result. Hence, according to the last subdivision of section 1903, the said liability ceases when it is proved that those liable for the acts of others employed all of the diligence of a good father of a family. The reason for the obligation imposed is not representation, nor interest, nor the necessity that someone must.

answer for the damage caused by one who has no personality or means with which to answer for himself, but the implied or presumed non-performance of the duties of precaution and prudence imposed by the civil relations between the person liable and the person for whom he must repair the damage. For that reason the said obligation is found among those arising from fault or negligence.' 12 Manresa, Civil Code, 610 and 617.

"If the statute should be given the scope which the appellee apparently ascribes to it, any action brought under section 1804 could easily be made illusory. It is not sufficient to engage the services of competent employees. That is one fact to be considered. Something concrete should be shown in relation to the particular case under investigation."

In the case of *Arzuaga* v. *Ortiz*, 266 Fed. Rep. 453–55, the First Circuit Court of Appeals, construing said section 1804 in the same way and basing its opinion on the commentaries of Manresa and *Panama Railroad Co.* v. *Toppin*, 252 U. S. 308, said:

"It remains to be considered what the rights of an employé are against his employer under the provisions of sections 1803 and 1804 of the Civil Code. These sections are a re-enactment of old provisions of the Spanish Civil Code. Section 1803 imposes liability upon all persons for their individual negligence, and section 1804 imposes liability upon certain persons for the negligence of their children, wards, and apprentices, and upon those owning or conducting an establishment or enterprise for the negligence of their employés. For example:

"It makes the father, and, in case of his death, the mother, liable for damages caused by minors who live with them;

"Guardians for damages caused by minors or incapacitated persons who are under their authority and live with them;

"Owners or directors of an establishment or enterprise for damages caused by their employés in the service of the branches in which the latter may be employed or on account of their duties;

"Masters or directors of arts and trades for the damages caused by their pupils or apprentices while they are under their custody.

"It is, however, provided that the liabilities imposed by this section (1804) shall cease if the person responsible therefor shall prove that he employed all the diligence of a good father of a family to avoid the damage.

"Manresa in his Commentaries on the Civil Code, in speaking of the liability imposed by these provisions, says:

" 'That said liability ceases when the persons who are held liable according to section 1804 . . .' 12 Manresa, 611.

"It appears from the foregoing that the owner or director of an establishment or enterprise is liable for damage caused by the negligence of his employé, acting in the course of his employment, unless he shall prove, as an affirmative defense, that he took the care and superintendence of a good father of a family to avoid the damage, and that this is so whether the person injured is or is not an employé engaged in the same enterprise; also that the duty of the owner or director does not end with his having exercised the diligence of a good father in selecting his employés; that he must go further, and show that he exercised the required diligence in superintending the work of the establishment or enterprise in which his employés are engaged. This seems to be the view taken by the Supreme Court of the United States in Panama Railroad Co. v. Toppin, 252 U.S. 308, 40 Sup. Ct. 319, 64 L. Ed. ——, decided March 15, 1920.

"In that case the court was construing article 2347 of the Civil Code of Panama and article 5 of the Panama Law, No. 62, of 1887, which contain similar provisions to those of sections 1803 and 1804 of the Civil Code of Porto Rico. Article 2347 of that Code provided:

" 'Every person is responsible not only for his own actions, for the purpose of making good the damage, but for the act of those who may be under his care.

" 'Thus, the father, and failing him the mother, is responsible for the acts of the minor children who live in the same house.

" 'Thus the tutor or guardian is responsible for the conduct of the pupil who lives under his protection and care.

" 'Thus the husband is responsible for the conduct of his wife.

" 'Thus the directors of colleges and schools respond for the acts of students while they are under their care, and artisans and empresarios for the acts of their apprentices and dependents in like cases.

" 'But this responsibility will cease if with the exercise of the authority and care which their respective characters prescribe for and confer on them they could not prevent the act.'

"Article 5 of Panama Law, No. 62, of 1887, provided:

" 'Railroad companies are responsible for the wrongs and inju-

ries which are caused to persons and properties by reason of the service of said railroads and which are imputable to want of care, neglect or violation of the respective police regulations which shall be issued by the government as soon as the law is promulgated.'

"In that case an engineer of the Panama Railroad Company, while operating an engine through the city of Colón, at a speed greater than that permitted by the police regulations of Panama, ran into the plaintiff while riding his horse, and, inasmuch as the railroad company had used due care in the selection of its engineer, one of its contentions was that it could not be held liable under the law of Panama for the injury caused by the negligence of the engineer. In reply to this contention, Mr. Justice Brandeis, in delivering the opinion of the court, said:

" 'This contention was made and rejected by the supreme court of Colombia in a case similar to the case at bar. Cancino v. Railroad of the North, decided December 16, 1897, XIII Judicial Gazette Nos. 652, 653. There suit was brought against the empresario of a railway to recover for the loss of a house by fire due to the negligent operation of a locomotive. The court rested the liability upon section 2347 of the Civil Code, declaring that all doubt as to the existence of the necessary dependency was removed by article 5 of law 62 of 1887, which "without in any way mentioning the dependents, employés, or workmen of railway enterprises, makes their empresarios responsible for the damages and injuries which they may cause to persons or to property by reason of the service of the said roads." The court continues: "And there is not in the record any proof whatever that any care or precaution, either on the part of the empresario or the engineer, had been taken to prevent the fire, the proof that the empresario on his part had exercised much care in the selection of his employés not being sufficient in the opinion of the court, because the diligence and care here treated of, is that which ought to have been exercised in order to prevent an injury that could have been easily foreseen." This case seems to overrule in effect the principal authority to which the plaintiff in error has referred us—in fact, it is not unlikely that such was the object of article 5 of law 62 of 1887.' "

The appellant contends that the complaint alleges no duty on its part to protect the plaintiff from the injury nor failure to perform that duty in order to make it liable. It suffices to say that the complaint recited all of the facts

that attended the accident and they cover the omissions pointed out by the appellant.

The averment that Casals was not authorized by his principal to engage the services of others for the conveyance of the credit-files, the omission of which is referred to in this assignment, is impliedly set forth in the other allegations. The business of the agent was to sell the said apparatuses belonging to the defendant and that required their being carried from one place to another. And their conveyance demanded the help of other persons, inasmuch as they weighed more than 125 pounds each, and it seems most logical to conclude that the power to engage others to assist him in the accomplishment of the object of the business, to be exercised in the course of his employment, was inherent to the agency.

██ In this assignment the theory is advanced that the plaintiff became a fellow-servant when his services were engaged by Casals, an employee of the defendant, and assumed the risk of the employment. This question is not new. This court and the Circuit Court of Appeals, First Circuit, have held that the said doctrine is not applicable in this jurisdiction.

In the case of *Correa* v. *Fajardo Sugar Co.*, 29 P.R.R. 318, this court said:

"Although the federal courts generally seem inclined to hold that the doctrine of *res ipsa loquitur* is not applicable to an action for damages by an employee against his employer, the rule thus established is not applicable in jurisdictions governed by the Civil Law in which the doctrine of fellow-servants is unknown, and that maxim is in complete harmony with the principles underlying the Civil Code."

In the *Arzuaga Case, supra,* the First Circuit Court of Appeals likewise said:

"The fellow servant rule does not prevail in Porto Rico; the defense of the good father contained in section 1804 of the Code is the rule in force there."

The sufficiency of the complaint is finally attacked on the ground that if Casals was in fact an employee of the defendant and the plaintiff was his fellow-servant, the complaint should have alleged that the plaintiff had waived his rights under the Workmen's Compensation Act. In view of the averments of the complaint relative to the engaging of the services of the plaintiff by the agent of the defendant, due to which the accident occurred, it can not be deduced as a question of law that the provisions of the Workmen's Compensation Act affording protection could have been invoked and therefore the benefit thereby afforded could not be renounced.

In the second assignment it is contended that the lower court abused its discretion in overruling the motion for a continuance. The ground for the motion was that two witnesses, who were policemen and one of whom was sick, had failed to appear. It was accompanied by two affidavits signed by the said witnesses and containing their testimony which proved to be cumulative evidence. The reason for the non-appearance of the other witness was not given. Furthermore, the trial began on March 31, 1923, and was postponed to May 19, 1923, the defendant having been thus enabled to introduce the rest of its evidence. This assignment is, therefore, without merit.

In the third assignment it is maintained that the trial court should have ruled that, as appeared on the face of the amended complaint of May 9, 1922, the action was barred by limitation. On this point the ruling of the court reads in part as follows:

"The original complaint was filed a little more than three months after the occurrence, or on July 10, 1920, and was demurred to on August 31, 1920. The amended complaint did not vary the original cause of action or set up a new one. It simply showed more specifically and minutely the facts constituting the cause originally presented, thus amplifying the complaint. It also appeared from the complaint and was shown by the evidence that the plaintiff was

a minor, wherefore this court holds that the said minor had six months after he obtained his majority in which to bring his action. (Pérez v. Guánica Central, 17 P.R.R. 927.—Sec. 40 Code Civil Procedure.)"

It may be said also that as the amended complaint did not change the cause of action, there is no solution of continuity between it and the original, and that therefore the said amended complaint relates back to the filing of the original complaint.

"The general rule is that an amendment to a petition which sets up no new cause of action, but merely amplifies and gives greater precision to the allegations in support of the cause originally presented, or states new grounds or specifications germane to such charges or allegations, relates back to the commencement of the action, and may be upheld without regard to the statute of limitations." 17 R.C.L. 821.

The appellant contends that the lower court erred in finding that José Casals Valdés was, at the time the accident occurred, an employee of the defendant, and in weighing the evidence. The evidence as a whole sustains that point. The general rules that govern cases of this nature are undisputed. *Singer Manufacturing Co.* v. *Rahn,* 132 U. S. 522. The only controversy is as to their application to the relations existing between the appellant and Casals. The appellant's general agent testified that Casals represented the corporation and had been assigned the western part of the Island which was under his control and management; that he received a commission on each apparatus that he sold. The trial court was right in finding that he was an agent or employee of the appellant. See also the cases of *Lewis* v. *National Cash Reg. Co.,* 84 N.Y.L. 598, 87 Atl. 345; *Williams* v. *Nat. Cash Reg. Co.,* 157 Ky. 836, 164 S. W. 112, and *Nat. Cash Reg. Co.* v. *Williams,* 171 S. W. 162, 161 Ky. 550.

There is no doubt that the appellant was responsible for the negligence of Casals when acting in the course of his employment. Nothing concrete showed that the defendant

had employed all of the diligence of a good father to prevent the injury. On the contrary the evidence showed that the warning of the law was disregarded. In spite of the fact that the plaintiff was 14 years of age Casals engaged his services for aiding him in conveying an apparatus weighing more than 125 pounds. It is insisted that the plaintiff was an intruder, but the lower court found that his services were engaged for pay and that the injury was caused as alleged by him. Whether he was or was not an intruder makes no difference. The appellant was responsible whether the person injured was or was not an employee engaged in the same enterprise. *Arzuaga, supra,* page 454.

Fixing the amount of the damages in the sum of $1,000 is assigned as error.

The plaintiff was attended by Dr. Guzmán Rodríguez. In his expert testimony the doctor described the injury suffered by the plaintiff, the medical attendance given him for four or five months and its probable consequences.

He also testified that the plaintiff had to be operated on because of an infection which developed some time within the first 10 days after having been injured, which infection could have resulted in his death; that the treatment given to the plaintiff was painful; that owing to the fact that the injury was of a permanent nature his muscle had lost about half an inch of its power to stretch out his injured leg; that such extensive power could only be recovered by another operation; that during four or five months after having been discharged from the hospital he saw the plaintiff limping and heard him complaining that his leg ached, and that all of this was due to the tissue of the cicatrice which the contraction of the leg had formed.

On the other hand, the plaintiff was a boot-black at the time of the accident. He testified that he earned fifty cents daily and that sometimes he earned up to $2 per day. If the painful treatment practiced on him for 4 or 5 months and

the probable consequences of the injury, especially as regards his working capacity, be taken into account the sum of $1,000 allowed by the court is reasonable. Although it is true that the testimony of Dr. Guzmán Rodríguez was contradicted by that of Dr. T. Ramírez Cuerda, especially in that part of it referring to the probable effects of the wound with regard to the plaintiff's ability for work, the lower court fixed the amount of $1,000 as just after having taken into consideration all of the attending circumstances.

The remaining assignments are slightly discussed. Since no citation of authorities or a convincing reasoning appears from them, we shall not give them consideration.

For all of the foregoing the judgment appealed from should be affirmed.